IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALLSTATE INSURANCE COMPANY, an Illinois corporation,

Plaintiff,

v.

RALPH B. BREEDEN,

Defendant.

CV. 01-1686-AS

OPINION AND ORDER

ASHMANSKAS, Magistrate Judge:

Plaintiff Allstate Insurance Company ("Allstate") brings this declaratory relief action against defendant Ralph B. Breeden ("Breeden"), who purchased a homeowner's insurance policy from Allstate (the "Policy"). After a fire destroyed Breeden's home and damaged virtually of the personal property in the home, Breeden made a claim under the terms of the Policy. Allstate seeks a declaration that the Policy does not cover Breeden's alleged losses because Breeden willfully made material misrepresentations about the value and extent of the personal property lost in the fire and because faulty workmanship caused the fire.

In July 2002, the parties filed cross-motions for summary judgment addressing all of the claims, counterclaims and affirmative defenses. On January 30, 2003, Judge Jelderks issued an opinion granting Allstate's motion for summary judgment, denying Breeden's motion for partial summary judgment and denying any other pending motions as moot. Judge Jelderks found that Breeden had misrepresented the extent of his losses and that, under Callaway v. Sublimity Inc. Co., 123 Or.App. 18 (1993), the Policy was voided by Breeden's fraudulent conduct. On appeal, the Ninth Circuit held that this court's reliance on Callaway was in error because Callaway involved an automobile insurance policy. The Ninth Circuit vacated this court's opinion to the extent it relied on Callaway and remanded for reconsideration based on Eslamizar v. Am. States. Ins. Co., 134 Or.App. 138 (1995), a case involving a fire insurance policy. The appellate court also held that Judge Jelderks properly entered partial summary judgment for Allstate on Breeden's counterclaim that Allstate was required to give specific reasons for denying his claim, finding that the applicable statute applied to underwriting decisions, not decisions to deny claims under existing policies.

On remand, Judge Jelderks again granted Allstate's motion for summary judgment finding that it had presented evidence of a detrimental action or change in position in reliance on Breeden's misrepresentations as required by Eslamizar. On appeal, the Ninth Circuit again reversed the district court's ruling, finding that the existence of disputed issues of fact concerning the extent of the misrepresentations, whether the fact and representations were material, and whether Allstate relied on the representations that were made, prevented the granting of summary judgment to Allstate. The appellate court vacated Judge Jelderks' rulings to the extent they were premised on the grant of summary judgment, and remanded for further proceedings, including a trial on the merits.

Presently before this court are the issues presented by Allstate's motion for summary

judgment that do not relate to the misrepresentation claim, which consist of Allstate's motion for summary judgment on Breeden's four affirmative defenses and three remaining counterclaims.[1] Also before the court is Breeden's motion for partial summary judgment in which Breeden seeks summary judgment on Allstate's second claim for declaratory relief based on an exclusion for faulty construction[2] and asks the court to find that: 1) Breeden is entitled to a judgment in the amount of the Policy limits of $147,700 on his personal property claim and $211,000 on his dwelling claim (plus the covered cost for debris removal); 2) the personal property of Kim Hardin and her children was the property of a "guest or resident employee" and not a "roomer, boarder or tenant" and, therefore, covered under the Policy; 3) Breeden's exterior deck and hot tub qualify as "other structures" and are covered under the Policy; 4) the allegations with regard to Breeden's humiliation, depression, lost of self-respect and distress related to the loss of his family home, if found to be true, are sufficient to support an award of damages; and 5) the misrepresentations of Breeden's children, if any, do not operate to void the Policy.[3]

Legal Standard

---

[1]On March 1, 2002, Judge Jelderk's granted Allstate summary judgment on Breeden's fourth claim for relief based on O.R.S. 746.650. Judge Jelderks held that the statute applied to an insurer's decision to insure a particular risk, not to an insurers decision to cover a claimed loss.

[2]Breeden also appears to seek summary judgment on Allstate's first claim for declaratory relief based on misrepresentation arguing that the fraud and concealment language of the Policy conflicts with a statutory provision requiring a showing of detrimental reliance. The Ninth Circuit has remanded this claim for trial finding that genuine issues of material fact exist. Additionally, the Ninth Circuit applied a detrimental reliance factor to Allstate's claim based on Eslamizar. Accordingly, the court will not address this argument at this time.

[3]Breeden also asked the court to find that Allstate breached the Policy by failing to pay the claim of Breeden's bank mortgagee. The Ninth Circuit noted in its opinion filed January 4, 2007, that Judge Jelderks found that Breeden lacked standing to assert that claim. The court finds no reason to reconsider this issue.

Rule 56 of the Federal Rules of Civil Procedure allows the granting of summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). "[T]he requirement is that there be no genuine issue of material fact." Anthes v. Transworld Systems, Inc., 765 F. Supp. 162, 165 (Del. 1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986))(emphasis in original).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is absent. Celotex v. Catrett, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the onus is on the nonmovant to establish that there is a genuine issue of material fact. Id. at 324. In order to meet this burden, the nonmovant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Celotex, 477 U.S. at 324.

An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome of the case. Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

/ / / / /

/ / / / /

Discussion

**Allstate's Second Claim for Declaratory Relief**

Allstate presents evidence that the cause of the fire was insulation in an electrical outlet box in the family room of Breeden's home and argues that Breeden's claim is excluded under Sections 22 and 23 of the Policy. The relevant sections of the Policy provide, in pertinent part, that:

> Losses We Do Not Cover Under Coverage A, Coverage B, Coverage C and Coverage L:
>
> **We** do not cover loss to the property described in
> **Coverage A — Dwelling Protection,**
> **Coverage B — Other Structures Protection,**
> **Coverage C — Personal Property Protection**
> and **Coverage L — Livestock Protection**
> consisting of or caused by:
>
> * * *
>
> 22. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
> a) planning, zoning, development, surveying, siting;
> b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
> c) materials used in repair, construction, renovation or remodeling; or
> d) maintenance;
>
> of property whether on or off the **residence premises** by any person or organization.
>
> 23. **We** do not cover loss to covered property described in **Coverage A — Dwelling Protection, Coverage B — Other Structures Protection, Coverage C — Personal Property Protection or Coverage L — Livestock Protection** when:
> a) there are two or more causes of loss to the covered property; and
> b) the predominant cause(s) of loss is (are) excluded under
>
> **Losses We Do Not Cover**, items 1 through 22 above.

Affidavit of Ann Lewis, Exhibit 1, Page 27.

Breeden points out that the Policy covers loss to the insured property caused by fire and asserts that, "[u]nless the insured intentionally caused the fire, the cause of the fire is irrelevant." Memorandum in Support of Breeden's Motion for Partial Summary Judgment at 2. Breeden argues that even if the cause of the fire was faulty workmanship, the fire was the predominant cause of the loss. Consequently, the exclusion for faulty workmanship is inapplicable in this instance.

Both of the cases relied on by Plaintiff in support of this argument are distinguishable from the case at hand based on the wording of the policies at issue. In fact, the Supreme Court made the same distinction in Insurance Company v. Transportation Company, 79 U.S. 194 (1870), one of the cases cited by Plaintiff.

In Insurance Company, a steamer was destroyed by a fire which resulted from a collision with a schooner. The owner of the steamer had purchased insurance for all damage caused by fire, "other than fire happening by means of any invasion, insurrection, riot, civil commotion, or of any military or usurped power." Id. at 194. The evidence established that, in the absence of the fire, the steamer would not have sunk below her promenade deck and could have been towed to safety and repaired at a cost of $15,000. However, as a result of the ensuing fire, the steamer fully submerged and keeled over, requiring the raising of the boat and additional repair at an additional cost of $7,500. The insurance company denied the claim based on the fact that the fire was caused by a collision and the policy did not cover damage resulting from a collision.

The Court found that the language of the policy, which provided coverage for loss from fire except if the fire was caused by specified events, also provided coverage for damage caused by any event not excluded under the policy. The fact that the owner of the steamer did not elect to insure

the steamer from damage caused by collision did not relieve the insurance company from liability for fire caused by collision, as long a collision was not a specifically excluded event. Id. at 197.

> It is true, as argued, that as the insurance in this case was only against fire, the assured must be regarded as having taken the risk of collision, and it is also true that the collision caused the fire, but it is well settled that when an efficient cause nearest the loss is a peril expressly insured against, the insurer is not to be relieved from responsibility by his showing that the property was brought within that peril by a cause not mentioned in the contract.

Id. at 199. The Court then distinguished the holding in St. John v. The American Mutual Insurance Company, 1 Kernan, 519, which construed a policy insuring against fire with an exclusion for any loss caused by the explosion of a steam boiler. The St. John court found that the insurance company was not liable to the insured for damage to property resulting from a fire that was caused by the explosion of a steam boiler. The Court noted that:

> [t]he proviso, or exception, was construed as extending to *fire* caused by such explosions, for, as the parties were contracting about the peril of fire alone, an *express* exception of all loss from explosions must have been meant to cover fire when a consequence of explosions, otherwise the exception would have been unmeaning. But the court said, if nothing had been said in the policy respecting a steam boiler, the loss, having been occasioned by fire, as its proximate cause, would have rested on the insurers, though it had been shown, as it might have been, that the fire was kindled by means of the explosion. The judgment thus turned on the effect of an express exception.

Id. at 200. The Court described the analysis and holding of the court in St. John as exhibiting "the difference, in effect, between an express exception from a risk undertaken, and silence in regard to a peril not insured against." Id.

In the other case cited by Breeden, the Oregon Court of Appeals considered a policy which insured against damage to a motor vehicle caused by specified perils, including fire or explosion.[4]

---

[4]The policy read, in pertinent part:
A. WE WILL PAY

Although defendant Continental offered collision coverage, the plaintiff purchased only the specified perils protection from Continental.[5] Northwest Agr. Co-op. Ass'n, Inc., v. Continental Ins. Co., 95 Or.App. 285 (1989). Continental denied plaintiff's claim for damage caused by a collision and resulting fire asserting that plaintiff's election not to purchase collision protection effectively excluded any damage caused by a collision. Because the collision caused the fire, the subsequent damage from the fire was not covered.

The Oregon appellate court rejected Continental's argument finding that the specified perils and the collision provisions did not provide mutually exclusive coverage. Id. at 289. The clear language of the specified perils provision covered damages caused by a fire regardless of the cause of the fire. The court noted that had Continental wished to exclude coverage for damages caused by fire which resulted from a collision, it knew how to do so, as evidenced by the existence of such an exclusion in the comprehensive coverage language. Id.

The Policy before the court insures Breeden against damage to his dwelling, other structures

---

1. We will pay for loss to a covered auto or its equipment under:
a. Comprehensive Coverage. From any cause except the covered auto's collision with another object or its overturn.
b. Specified Perils Coverage. Caused by:
(1) Fire or explosion;
(2) Theft;
(3) Windstorm, hail or earthquake;
(4) Flood;
(5) Mischief or vandalism;
(6) The sinking, burning, collision or derailment of any conveyance transporting the covered auto.
c. Collision Coverage. Caused by the covered auto's collision with another object or its overturn.

[5] The plaintiff purchased insurance from a different insurance company against loss to the plaintiff's vehicles by collision with another object or its overturn.

and personal property caused by fire. However, the language found in Sections 22 and 23 of the Policy specifically excludes damage caused by faulty workmanship. This language is more akin to that considered in St. John than that addressed by the courts in Insurance Company and Northwest Agr. Co-op.. Accordingly, this court finds that if faulty workmanship (insulation in an electrical outlet box) is found to be the predominant cause of the fire, the exclusionary language set forth in Sections 22 and 23 applies and the resulting damage is not an insured loss under the terms of the Policy.

Breeden's argument that the fire, not the faulty workmanship, was the predominant cause of the damage, is equally unavailing. When two concurrent causes result in a loss, the predominating, or efficient, cause of a loss must be regarded as the proximate cause. Under this scenario, the "cause which set the other in motion and gave to it its efficiency for harm at the time of the disaster must rank as predominant." Insurance Company, 79 U.S. at 199. The question of which of two causes is the proximate cause of a loss is best left to the factfinder. Metropolitan Property & Cas. v. Harper, 168 Or.App. 358, 372 (2000); Julian v. Harford Underwriters Ins. Co., 100 Cal.App.4th 811 (2002).

Not only is the question of causation at issue in this matter, genuine issues of material fact exist with regard to whether the faulty workmanship was, in fact, the cause of the fire. Mark Wilson, the Fire Marshal who investigated the fire, was unable to determine the exact cause of the fire. However, he indicated that the "fire apparently started in the family room" and that it was possible that the fire started as the result of an electrical failure in the wiring or a power strip or that outlets packed full of fiberglass insulation overheated. Affidavit of William Dickas in Support of Defendant's Motions for Partial Summary Judgment ("Dickas Affidavit"), Exhibit 1(c).

Breeden agreed with this conclusion when told that the fire was likely an electrical fire. Breeden described altering the wiring in a light switch in the family room that had been giving him trouble. He also explained that his nephew had packed outlet boxes with insulation when the family room was remodeled. He suspected that either of these two alterations caused the fire. Affidavit of Andrew Lauersdorf in Support of Plaintiff's Response to Defendant's Motions for Partial Summary judgment, Exhibit 42. David Harms, an expert trained in advanced arson, cause and origin, was unable to determine the exact cause of the fire. Dickas Affidavit, Exhibit 1(d). In light of the conflicting testimony on the cause of the fire, the court finds that a jury must determine if the faulty workmanship caused the fire and, if so, whether the faulty workmanship or the resulting fire was the predominant cause of Breeden's loss.

**Breeden's Counterclaims**

- First Counterclaim for Breach of Contract

Breeden's alleges that Allstate breached the terms of the Policy by failing and refusing to pay Breeden for the losses claimed by him. Breeden also alleges that, as a result of Allstate's breach, Breeden has suffered the loss of his self-respect and pride, and has experienced humiliation and depression. He asserts that these damages were foreseen, anticipated and in contemplation of the parties to the Policy and that he is entitled to recover $750,000 for such losses. Allstate argues that Breeden is not entitled to emotional distress damages under these circumstances and asks the court for summary judgment with regard to these damages.

The Oregon Supreme Court has adopted the general rule that "emotional distress caused by pecuniary loss from breach of contract is not recoverable." Farris v. U.S. Fidelity and Guaranty Co., 284 Or. 453, 456 (1978). Breeden alleges that he suffered emotional distress as a result of Allstate's

failure to pay for the losses claimed by him. Clearly, Breeden's alleged emotional distress was caused by a pecuniary loss. As such, Breeden is not entitled to emotional distress damages based on Allstate's breach of the Policy.

Apparently acknowledging that he is not entitled to emotional distress damages under the current state of law in Oregon, Breeden invites the court to predict that the Oregon court would adopt the exception found in Section 353 of the Restatement of Contracts 2d, which allows recovery for emotional disturbance based on a claim for breach of contract when the breach also causes "bodily harm or the contract or breach is of such kind that serious emotional disturbance was a particularly likely result." Memorandum of Defendant Ralph Breeden in Support of Motions for Partial Summary Judgment ("Breeden's Memo in Support), Page 23. Breeden argues that the application of Section 353 is particularly appropriate in this instance based on Allstate's promise to restore his home and protect him from foreclosure. The court is not convinced by Breeden's arguments.

The Oregon Supreme Court rejected a similar request to adopt the exclusion set forth in Section 353 under unique circumstances in Keltner v. Washington County, 310 Or. 499 (1990). The plaintiff agreed to discuss the identity of a murderer and the location of the murder weapon with police only if the police agreed to keep her identity confidential. The plaintiff minor was identified as the informant in police reports that were provided to the murderer's attorney, who then disclosed the name of the informant to his client. The plaintiff filed an action for breach of contract seeking damages for mental suffering. The appellate court affirmed the trial courts dismissal of the complaint for failure to state a claim explaining that:

> Although the facts are compelling and numerous jurisdictions have cited the rule of the Restatement [(Second) of Contracts §353 (1981)] with approval, we are bound

> by the holding of Farris v. U.S. Fid. and Guar. Co., [supra], that emotional distress damages are not recoverable in a contract action."

Id. at 503 (citing Keltner v. Washington County, 100 Or.App. 27, 30 (1989)). The plaintiff again appealed arguing that Humphers v. First Interstate Bank, 298 Or. 706 (1985) and Section 353 justify overruling or reconsidering the existing rule.

In affirming the lower courts' rulings, the Oregon Supreme Court noted that "[c]ourts do not lightly overturn precedent, especially when the precedent has been followed for a long time." Keltner, 310 Or. at 504. The court applied the three-part test used by the court to determine when it is appropriate to reconsider a court-created doctrine and found that none of the factors were present.

Following the lead of the Oregon Supreme Court, this court finds that Breeden has failed to present evidence that: 1) the earlier case was inadequately considered or was wrong when it was decided; 2) surrounding statutory law or regulations have altered a legal element relevant to the prior case: or 3) that the ruling was tailored to specific factual conditions that are not present or have been materially altered in the case at hand. Accordingly, this court will not accept Breeden's invitation to overrule existing Oregon case. Breeden is not entitled to recover emotional distress damages resulting from Allstate's failure to pay Breeden's amounts allegedly due under the Policy.

- Second Counterclaim for Negligent and Intentional Bad Faith Administration of Insurance Policy

In his second counterclaim, Breeden contends that Allstate negligently or intentionally administered the Policy in violation of the Oregon Insurance Code and its regulations and in violation of the standard of care applicable to all insurers doing business in the State of Oregon. Allstate asserts that the special relationship required to support this tort claim under Oregon law does not exist in this instance.

In Employers' Fire Ins. Co. v. Love It Ice Cream Co, 64 Or.App. 784, 791 (1983), the Oregon Court of Appeals stated unequivocally that "an insurer's bad faith refusal to pay policy benefits to its insured sounds in contract and is not an actionable tort in Oregon." The Oregon Supreme Court created an exception to this clear-cut rule for liability insurers that assume an obligation to defend the insured and then refuse to settle for less than the policy limits. Georgetown Realty v. The Home Ins. Co., 313 Or. 97, 106 (1992). The court recognized the existence of a tort claim for negligence in the performance of a contract when a standard of care exists independent of the contract and expanded that doctrine to encompass the relationship between insurers and insureds under specific circumstances.

> We now reach the same conclusion with regard to liability insurers that this court reached in the cases concerning physicians, lawyers, architects, and others. * * * As in those cases, the relationship here is between contracting parties. When a liability insurer undertakes to "defend," it agrees to provide legal representation and to stand in the shoes of the party that has been sued. The insured relinquishes control over the defense of the claim asserted. Its potential monetary liability is in the hands of the insurer. That kind of relationship carries with it a standard of care that exists independent of the contract and without reference to the specific terms of the contract.

Id. at 110-11. However, even after Georgetown Realty, the Oregon courts have limited tort claims against insurers to those scenarios where the insurer accepted the responsibility for defending its insured and then acted against the best interests of the insured. In Strader v. Grange Mut. Ins. Co., 179 Or.App. 329 (2002), the Oregon appellate court explained that:

> the relationship between an insurer and its insured is special with respect to the insurer's performance of its duty to defend, so that negligent performance of that duty gives rise to a tort claim, but the same relationship is not special with respect to the insurer's refusal to settle within policy limits, which sounds only in contract; in the former context, the insurer is in something resembling a fiduciary role, whereas in the latter, it and the insured are adversaries.

Id. at 334.

In his claim for negligent or intentional bad faith administration of an insurance policy, Breeden asserts generally that Allstate administered the Policy in violation of the Oregon Insurance Code and the standard of care applicable to all insurers doing business in Oregon. Breeden then alleges that he was damaged as a result of Allstate's conduct and breach of the Policy. On its face, this claim is grounded solely in Allstate's failure to act in accordance with the terms of the Policy, which sounds in contract and is not actionable as a tort under Oregon law.

Breeden also sets forth specific conduct which he claims is evidence of Allstate's bad faith handing of his claim. With the exception of Breeden's allegation that Allstate intentionally refused to pay the claim of Breeden's mortgage holder in order to force the mortgage holder to foreclose, thereby allowing Allstate to avoid its lawful obligation to pay the claim (which is discussed below), all of Breeden's specific complaints relate to Allstate's contacts with Breeden and the handling of his personal claims. Again, this alleged tortious conduct is limited to Allstate's failure to act in accordance with the Policy and, under Oregon law, must be pursued under Breeden's breach of contract claim.

With regard to Allstate's handling of Breeden's mortgage, Breeden argues that Allstate had a duty to ensure that his mortgage remained current and that Allstate's failure to pay the claim of his mortgage company, which resulted in the foreclosure on the mortgage, is comparable to an insurer's failure to settle the claim within the limits of a policy. First, the court is unable to find, and Breeden has failed to designate, where in the Policy Allstate agrees to assume the obligation of paying Breeden's mortgage. In the absence of such language, Breeden was responsible for continuing to pay his mortgage and the resulting foreclosure was the result of Breeden's failing to pay his mortgage in a timely manner.

Second, it appears from the language of the Policy that the mortgage holder was an additional insured under the Policy. The evidence reveals that the mortgage holder filed its own proof of loss with Allstate in early December 2000, noting that the property was in foreclosure and seeking all amounts due under the mortgage. Allstate dealt directly with the mortgage company on its claim and eventually denied the claim when the mortgage company satisfied the debt by buying the property at the foreclosure sale.[6] This factual scenario is distinguishable from an insurer who commits to representing the interests of its insured in litigation involving a third party. Here, Allstate's relationship with the mortgage company was akin to its relationship to Breeden. Both were insureds under the Policy and both of their claims were denied. Allstate never stepped into the shoes of Breeden in negotiating his continuing liability with his mortgage company – Allstate merely denied the proof of loss filed by the mortgage company under the terms of the Policy. Allstate had no fiduciary obligations to Breeden in handling the claim of his mortgage company. Accordingly, Breeden has failed to establish the existence of a special relationship between Allstate and himself necessary to support a claim for tortious breach of a contract.

Breeden also argues that O.R.S. 746.230 imposes fiduciary duties on all insurers doing business in the state of Oregon. This argument is without merit. The Oregon appellate court has held that "the violation of O.R.S. 746.230(1)(f), which requires insurers to settle claims promptly and in good faith where their liability is reasonably clear, does not give rise to tort action. Love It, supra, 64 Or.App. at 790.

Breeden has failed to establish that Allstate was subject to a increased standard of care

---

[6]The determination that Allstate dealt directly with the mortgage holder is also supported by the opinion of Judge Jelderks and the Ninth Circuit that Breeden lacks standing to complain about Allstate's denial of the mortgage holder's claim.

independent of the Policy when handing the claims of Breeden and his mortgage holder. Breeden is unable to support his claim for negligent or intentional bad faith administration of the Policy. Accordingly, Allstate is entitled to summary judgment on Breeden's second counterclaim.

- Third Counterclaim for Intentional Infliction of Emotional Distress

Breeden alleges that Allstate's conduct and behavior toward Breeden in investigating and eventually denying his claim under the Policy, and the emotional distress and humiliation he suffered as a result of Allstate's actions, supports a claim for intentional infliction of emotional distress and damages in the amount of $750,000. Breeden also alleges that Allstate's conduct was wilful, malicious, oppressive, and outrageous in the extreme. Based on this conduct, Breeden seeks punitive damages in the amount of $15,000,000. Allstate contends that Breeden has failed to establish that: (1) Allstate intended to subject Breeden to emotional distress; (2) Breeden, in fact, suffered compensable emotional distress, or (3) Allstate's conduct rose to the level necessary to support either emotional distress or punitive damages.

To avoid summary judgment in Allstate's favor on Breeden's claim for intentional infliction of emotional distress, Breeden must offer facts sufficient to establish a genuine issue of material fact with regard to whether Allstate: (1) intended to inflict severe emotional distress; (2) caused severe emotional distress; and (3) in doing so, engaged in conduct constituting an extraordinary transgression of the bounds of socially tolerable conduct." Sheets v. Knight, 308 Or. 220, 236 (1989). Whether conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct is a question of law. Harris v. Pameco Corp., 170 Or.App. 164, 171 (2000). The conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Christofferson v. Church

of Scientology, 57 Or.App. 203, 211 (1982), rev. den. 293 Or. 456 (1982), cert. denied 459 U.S. 1206 (1983).

Breeden did not specify in his answer what "outrageous" conduct of Allstate he is relying on in support of this claim. In his opposition to Allstate's motion for summary judgment, Breeden argues that the following conduct exceeds the bounds of socially tolerable conduct:

- Plaintiff issued and enforced a form of insurance policy, with respect to the effect of alleged misrepresentations, which it knew to be expressly prohibited by Oregon law.

- Plaintiff enforced an interpretation of its basic policy form with respect to alleged misrepresentations by children - which it knew to be contrary to the applicable Oregon rider, and to Oregon law.

- Plaintiff's agents falsified and misrepresented Defendant's testimony under oath, in order to fabricate a justification to deny Defendant's claim.

- Plaintiff ignored and disregarded the testimony and opinion of its own expert in order to fabricate a justification to deny Defendant's claim.

- Plaintiff ignored and refused to pay the claim of Defendant's mortgagee, knowing that if it stalled until after foreclosure, it could avoid that claim as well.

- Without notice to Defendant, and without allowing him a opportunity to respond, Plaintiff collected and relied upon false gossip about Defendant, e.g. that Defendant was a drug used, a drug dealer and a miserable husband and father.

Memorandum of Defendant in Opposition to Plaintiff's Motion for Summary Judgment at 5-6. Not only is none of this conduct outrageous or beyond the bounds of social decency, all of the conduct relates to Allstate's determination of the compensability of Breeden's claims and are justifiable business actions.

The Oregon courts have consistently held that disagreements over the compensability of a

claim do not amount to outrageous conduct. In State Farm Mut. Auto. Ins. Co. v. Berg, 70 Or.App. 410 (1984), the Oregon appellate court held that a disagreement over the proper construction of a term in automobile liability policy could not be characterized as outrageous conduct sufficient to support a claim for emotional distress damages.

> For the tort of outrageous conduct to be actionable, the plaintiff must allege facts showing conduct beyond the limits of social toleration. *** A difference of opinion as to the meaning and application of the terms of a contract could rarely, if ever, amount to outrageous conduct. Until the present action, no Oregon decision construed the meaning of the terms "occupying" and "pedestrian" in the context of PIP coverage. That we have construed those terms differently from State Farm does not make its position one taken in bad faith. Its raising the policy exclusion to deny liability under the facts of this case suggests neither bad forth nor egregious conduct.

Id. at 418 (cites omitted). In Rossi v. State Farm Mut. Auto. Ins. Co., 90 Or.App. 589, 591-92 (1988), the court followed Berg and held that allegations that establish "nothing more than a typical disagreement between an insurer and an insured over the existence of compensable events and the amount of compensation" do not approach "bad faith, egregiousness or the limits of social toleration."

On the other hand, not all activity of an insurer in determining whether to pay a claim is appropriate. In Green v. State Farm Fire and Cas. Co., 667 F.2d 22, 23 (9th Cir. 1982), plaintiff filed a claim under his homeowner's policy for fire damage to his barn. The insurance company deposed plaintiff at the suggestion of the police in the hopes of obtaining evidence to support an arson claim. The company assured plaintiff that the information obtained would be held in confidence and used solely to determine benefits due under the policy but then provided a copy of the sworn statement to the police. Even after the police concluded that there was insufficient evidence to charge the plaintiff with arson, the company's adjuster identified himself to the plaintiff as a police officer and threatened to have him charged with arson if he pursued the claim against his insurance policy. The

information obtained during the deposition was used in a legal action in state court unrelated to the insurance claim and was used before the Grand Jury investigating a possible charge of arson, which was rejected. The company eventually paid the claim and the insured filed an action against the company for outrageous conduct seeking damages for severe emotional distress. In affirming the finding by the jury that the conduct was outrageous, the Ninth Circuit stated "State Farm characterizes its conduct as reasonable behavior for an insurer investigating a claim. A carefully instructed jury decided otherwise, and the evidence fully supports that conclusion." Id. at 24

The alleged offensive conduct currently before this court is not properly characterized as outrageous. Allstate engaged in common investigation procedures to determine whether Breeden's claims were excluded under the terms of the Policy. The false gossip allegedly relied upon by Allstate was voluntarily provided to it by an employee who knew Breeden's first wife and appears to have remained confidential. The court finds that Breeden has failed to support his claim for intentional infliction of emotional distress and that Allstate is entitled to summary judgment on this claim.

**Breeden's Affirmative Defenses**

- First Affirmative Defense

Breeden alleges in his first affirmative defense that Allstate "has failed to plead with particularity the circumstances of Defendant's alleged misrepresentations or omissions, or those of his children, in violation of Fed.R.Civ.P. 9(b)." Deft's Answer and Counterclaims at 14. In an order dated March 1, 2002, Judge Jelderks held that "the amended complaint now adequately pleads the circumstances of the alleged misrepresentations, satisfying the requirements of Federal Rule of Civil Procedure 9(b)." Based on the law of the case, Allstate is entitled to summary judgment on

Breeden's first affirmative defense.

- Second Affirmative Defense

In his second affirmative defense, Breeden asserts that Allstate is estopped from complaining about the manner in which he completed the personal property claim schedules because he relied upon Allstate's instruction and advice in completing those forms. To establish equitable estoppel under Oregon law:

> "[t]here must be (1) a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it."

Day v. Advanced M&D Sales, 336 Or. 511, 518-19 (2004) (citations omitted).

Breeden testified that Greg Richards gave him advice on how to complete the inventory of personal property that was damaged by the fire. Breeden stated that Richards told him to include the personal property of Brady and Tyler, Kim Hardin's children, and to "bump up" the value of the property by 30%.[7] Richards suggested using catalogs to help Breeden remember what he had and to give him a good idea of what the items cost. David Boatman advised Breeden that he should just include big ticket items such as the furniture, appliances and electronics. Boatman explained that Allstate would give him "blanket coverage" for everything else. Affidavit of Andrew C. Lauersdorf in Support of Plaintiff's Motion for Summary Judgment ("Lauersdorf Supporting Affidavit"), Exhibit 19, Page 8

Breeden indicated at his deposition that he rejected the recommendations of Richards and Boatman when completing the inventory list. He stated that he didn't think it would be right to list

[7] After the initial inventory list was compiled, Richards told Breeden that all he really needed to list was the furniture, the appliances and the electronics.

the personal property of Brady and Tyler and that he ignored Richards instructions to bump up the claim. He did not accept Boatman's suggestion that he just inventory big ticket items based, in part, on the advice of Disaster Restorations, and prepared an itemized inventory of all of the personal property damaged in the fire. He understood that the inventory should be truthful and accurate to the best of his memory. However, he admits that there was some "exaggeration" in the inventory list provided to Allstate. Lauersdorf Supporting Affidavit, Exhibit 21, Page 7.

Breeden indicated that the list included items of clothing that he didn't own, some items of clothing were listed more than once and pieces of furniture were on the list that shouldn't be there. The number of CD's and videocassettes lost or damaged in the fire were exaggerated. Breeden explained that he told his children and friends who were helping him compile the list what Richards had told him about asking for the "full maximum dollar amount." He thought that might be the reason that people exaggerated the items lost in the fire and the value of the items. Id. at 10-11. He also received quotes from a couple of stores on what it would cost to purchase items comparable to those that he lost which overstated the value of the damaged items. He admitted that he didn't really look at the inventory list before he turned it over to Allstate and that the list was not accurate – in fact, about 30 per cent of the stuff wasn't right. Responding Affidavit of William Dickas, Exhibit 6, Page 3. He stated that he felt that his kids and friends set him up for "a pretty big fall." Lauersdorf Supporting Affidavit, Exhibit 21, Page 18.

The evidence supports Breeden's claim that Allstate agents advised Breeden to include property that wasn't his and to bump up the value of the property in his inventory report. Breeden passed this advice on to his children and friends, who apparently followed the advice in listing property that Breeden didn't own and exaggerating the value of the property. Even though Breeden

states that he didn't rely on Allstate's advice, the inventory list did include items not damaged in the fire or owned by Breeden and the value of the items listed exceeded the actual costs of those items, which is contrary to Breeden's assertion. The court finds that, viewing the evidence in the light most favorable to Breeden, the evidence raises a genuine issue of material fact on Breeden's affirmative defense of equitable estoppel.

- Third Affirmative Defense

Breeden's third affirmative defense is based on a provision in the Policy relating to a change or increase in hazard. Breeden contends that the provision is vague and unusually difficult to understand and that Allstate has knowingly applied the provision in this instance as a pretext in order to punish him.

Allstate did not rely on the change or increase in hazard language of the Policy in denying Breeden's claim. Instead, Allstate relies solely on paragraphs 22 and 23 of the Policy which exclude losses caused by faulty, inadequate or defective planning, construction or maintenance. Because the change or increase in hazard language is not at issue, Allstate is entitled to summary judgment on Breeden's third affirmative defense.

- Fourth Affirmative Defense

Breeden alleges in his fourth affirmative defense that the monies advanced by Allstate were for living expenses and to replace essential items and were made without regard to the value or extent of Breeden's personal property claim. The Ninth Circuit has already held that issues of fact exist with regard to whether Allstate relied on Breeden's misrepresentations. Accordingly, Allstate is not entitled to summary judgment on Breeden's fourth affirmative defense.

**Breeden's Request for Specific Findings**

In his motion for summary judgment, Breeden asks the court for specific findings on a number of specific issues. Breeden's request for a judgment in the amount of the Policy limits for personal property and dwelling is denied. The Ninth Circuit has determined that genuine issues of fact remain with regard to Allstate's obligation to pay under the terms of the Policy. Accordingly, any judgment in Breeden's favor would be premature. The court also denies Breeden's request for a ruling that the misrepresentations of his children do not void the Policy. Allstate represents that it is relying solely on Breeden's misrepresentations, and his ratification of his children's misrepresentations, in this lawsuit. Breeden seeks a ruling that, if his allegations are true, he is entitled to what amounts to emotional distress damages. The court has already addressed this issue in detail in its discussion of Breeden's claims for punitive damages and emotional distress damages as set forth in his counterclaims and stands by that ruling in denying Breeden's request for these damages. This leaves Breeden's requests for findings that Kim Hardin's personal property is covered by the Policy and that the exterior deck and hot tub qualify as "other structures" under the term of the Policy. The court will address these items in detail below.

- Coverage for Hardin's Personal Property

The Policy protects the personal property of an insured person. "Insured Person" is defined as "**you** and, if a resident of **your** household: (a) any relative; and (b) any dependent person in your care." Affidavit of Ann Lewis, Exhibit 1, Page 14. The Policy also protects, at the option of the insured, "personal property owned by a guest or **residence employee** while the property is in a residence **you** are occupying." Id. at 20. The term "residence employee" is defined in the Policy as:

> an employee of an **insured person** while performing duties arising out of and in the course of employment in connection with the maintenance or use of **your residence**

> **premises**. This includes similar duties performed elsewhere for an **insured person**, not in connection with the **business** of an **insured person**.

The term "guest" is not defined in the Policy but is defined in the The American Heritage Dictionary of the English Language, Third Edition (1996), as "[o]ne who is the recipient of hospitality at the home or table of another." The Oregon court considers four factors to determine whether an individual is a resident in an insured's household:

> (1) whether the parties live under one roof; (2) the length of time they have lived together; (3) whether the residence is intended to be permanent or temporary; and (4) whether the parties are financially interdependent.

State Farm Mut. Ins. Co. v. McCormick, 171 Or.App. 657, 661 (2000).

Hardin, Breeden's ex-fiance, lived with Breeden and his children at Breeden's residence for almost two years before moving into her own apartment one week before the fire. During the time she lived with Breeden, Hardin contributed to the payment of the mortgage and utilities and received mail at the property. Hardin also served as the bookkeeper and purchasing agent for Breeden's construction business, which he operated from his residence. A number of Hardin's personal items remained at the property and were damaged by the fire.

Breeden argues that Hardin was a guest or residence employee and that her personal property is covered under Paragraph 2 of Coverage C. Allstate contends that Breeden was resident while she was living with Breeden.

The Oregon courts generally consider a person's status as a resident of a particular household to be question of fact. However, "if the evidence does not disclose a factual situation from which it can be said that differing inferences could be drawn," a person's qualification as a household resident may be resolved as a matter of law. Farmers Ins. Co. of Oregon v. Jeske, 157 Or.App. 362, 366 (1998). The court is convinced that, based on the facts currently before it, there is only one

reasonable conclusion – that Hardin was a resident of Breeden's household.

Here, Hardin occupied Breeden's residence for almost two years, she assumed partial responsibility for the financial obligations for the household and she did not maintain a separate residence. Generally, the term "guest" implies a short-term visit with no assumption of financial responsibility and the existence of a primary residence elsewhere. These facts undeniably establish that Hardin was a resident of the Breeden household until she moved out shortly before the fire. The fact that Hardin worked at Breeden's construction business which was operated out of the property does not qualify her as a "residence employee." The term "residence employee" as defined by the Policy requires the individual to perform duties in connection with the maintenance or use of the residence. Hardin performed bookkeeping and purchasing agent duties for a contracting business which in no way contributed to the maintenance or use of the residence. Allstate's determination that Hardin was a resident and that her personal property is not covered by the Policy was appropriate.

- Coverage for Exterior Deck and Hot Tub as "Other Structures"

Breeden filed a claim for damages to his deck and hot tub, which he estimates will cost $20,000 to repair and replace. Breeden acknowledges that Allstate has not yet determined whether the deck and hot tub fall under the "dwelling protection" coverage or whether they qualify as "other structures". However, he has asked the court to find that these items were independent of the residence and should be covered as "other structures" under the Policy.

The Policy provides "dwelling protection" coverage in the amount of $211,000 and additional coverage of $35,000 for "other structures." "Dwelling protection" covers the insured's dwelling including attached structures. "Structures that are connected to [the] dwelling by only a

fence, utility line or similar connection are not considered attached structures" under the Policy. Affidavit of Ann Lewis, Exhibit 1, Page 18. The "other structures protection" under the Policy covers "structures attached to [the] dwelling by only a fence, utility line, or similar connection.

The only evidence before the court are photographs offered by both parties showing the fire damage to the residence, the deck and the hot tub, and a drawing of the layout of the house and decks. While the photographs clearly indicate that the decks were adjacent to the house, it is not possible to determine if or how the deck is attached to the house. Breeden indicates in his memorandum in support of his motion that the deck was free standing on its own supports but that "[i]t is possible that some of the first level deck boards may have been supported by a ledger board which may itself have been connected to a sill plate of the home." Breeden's Memo in Support, Page 18. Breeden's testimony, on its own, raises a genuine issue of material fact with regard to exactly how the deck was built and whether the deck was attached to the residence in any way. In light of the existence of a material issue of fact, the court reserves the determination of whether the deck and hot tub were covered by the "dwelling protection" or the "other structures protection" to the ultimate factfinder.

<u>Conclusion</u>

Allstate's motion (#68) for summary judgment is GRANTED with regard to Breeden's Second and Third Counterclaim, First and Third Affirmative Defenses and claim for emotional distress damages under his First Counterclaim for breach of contract and DENIED with regard to

/ / / / /

/ / / / /

/ / / / /

Breeden's Second and Fourth Affirmative Defenses. Breeden's motion (#80) for partial summary judgment is DENIED in its entirety.

DATED this 17th day of December, 2007

/s/ Donald C. Ashmanskas
DONALD C. ASHMANSKAS
United States Magistrate Judge